## WESTERN UNION TELEGRAPH CO. v. ALLEN. (No. 2263.)

(Court of Civil Appeals of Texas. Texarkana. May 7, 1920. On Motion of Appellee for Rehearing, May 20, 1920.)

**Telegraphs and telephones** ⬦➡66(4)—**Evidence held not to show delay by initial company.**

In an action for damages for delay in delivery of a telegram brought against the initial company, evidence that the initial company did not have the message on its file of transmitted messages *held* insufficient to show delay by it, where the records of the initial and connecting companies showed that the message was seasonably delivered to the connecting company by whom its transmission was delayed.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Elza Mentz Allen against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

About 1 o'clock a. m. September 14, 1917, appellant delivered to appellee, then at her home in Houston, a telegram from one Newell, then at Tampico, Mex., as follows:

"Will you accept kindergarten position here hundred twenty-five monthly plus traveling expenses? Wire immediately."

A few minutes after the telegram was delivered to her appellee, talking over the phone to an employé of appellant in its Houston office, dictated a reply thereto, which the employé undertook to transmit, as follows:

"I will accept position. Wire instructions how and when to come, also traveling expenses."

Newell waited for the reply until September 16, when, not having received it, he left Tampico, and in the evening of that day employed another teacher to fill the place he offered to appellee. The reply did not reach Tampico until 5 o'clock p. m. of said September 16, which, evidently, was after Newell left that place, for it was not received by him until November 8.

In her petition appellee alleged that appellant accepted her reply message "for transmission and delivery, and bound and obligated itself to transmit and deliver promptly to said John I. Newell at Tampico, Mexico. That defendant negligently and carelessly failed to transmit, and cause to be transmitted, promptly said message to its said destination, and negligently and carelessly failed to deliver and cause to be delivered promptly said message at Tampico, Mexico, as it had bound and obligated iteself to do."

At the trial appellee testified that at 7 or 8 o'clock of the morning of said September 14 she was told, in reply to inquiry she made of appellant's employés in its Houston office,

that her message to Newell had been forwarded. In the afternoon of that day she called at appellant's said office, when "they tried to tell me," she said, "the Western Union never received such a message from me, because they couldn't find it on file." Employés of appellant then in its said office suggested to appellee that she come back at 7 p. m., and see appellant's manager. She did so, and was informed by the manager "that no such telegram had been received by them of that date. The manager," appellee continued, "questioned me as to the truth of my statement. He said I might have made a mistake and sent it to the Postal." On the afternoon of September 16 said manager, talking to appellee's sister over the phone, told her he had found no trace of the message, and had her to read to him a copy of it, which appellee had kept. McElroy, appellant's "late night chief operator," testified that the practice in appellant's office was for a clerk to take charge of sent messages, and, after sorting them, to file them in the commercial department. An instrument, identified by a witness as the message appellee dictated to appellant's employé over the phone as hereinbefore stated, was produced at the trial and admitted as evidence. When appellant found it, and where, and under what circumstances, was not disclosed by the testimony.

It appeared from testimony offered by appellant that it received the message of appellee as she testified it did, and that it promptly transmitted and delivered it to its connecting line in Galveston, who promptly transmitted it to Vera Cruz, Mexico. According to this testimony the delay in the transmission of the message occurred after it reached Vera Cruz.

The jury found, in response to special issues submitted to them, that appellant did not use ordinary care to transmit and deliver the message to its connecting line at Galveston, and that its failure to do so was the proximate cause of damages appellee suffered. Thereupon the court rendered judgment in appellee's favor of $9.18, which, it appeared from undisputed testimony, was the loss she suffered as a result of the delay in the transmission and delivery of her message to Newell.

Hume & Hume, of Houston, for appellant.
H. E. Stephenson and C. D. Ferguson, both of Houston, for appellee.

WILLSON, C. J. (after stating the facts as above). The correctness of the theory on which the court below tried the case—to wit, that it appeared that the only duty appellant owed appellee was to promptly transmit and deliver her message to Newell to its connecting carrier in Galveston—was not questioned there, and is not questioned here, by appellee. It was on that theory, and the theo-

---

⬦➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ry that there was no testimony that it failed to discharge the duty, that appellant requested said court to instruct the jury to return a verdict in its favor, and complains here of its refusal to do so.

We have read the testimony in the record, and agree with appellant that it did not warrant a finding that the loss appellee suffered was due to delay on its part in transmitting the message and delivering same to its connecting carrier in Galveston. The insistence of appellee to the contrary is based on the fact that the message was not transmitted to Tampico within a reasonable time after it was delivered to appellant, and testimony referred to in the statement above, showing: (1) The practice in appellant's Houston office to have been to file sent messages in a place for the purpose; (2) that appellant's employés in said office, on the day appellee delivered the message there and the two days following that day, repeatedly stated to her that the message was not on file, and could not be found in said office, and never later explained why same could not then be found; (3) that appellant's manager two days after she delivered the message to it asked to be, and was, furnished by appellee's sister over the phone a copy of the message. The argument is that the jury had a right to infer from said testimony that the delay in the transmission of the message was appellant's in delivering it to its connecting carrier in Galveston. But if such an inference from the circumstances relied on unexplained would have been warranted, we think it was not explained as those circumstances were by other testimony in the record. Documents purporting to be and identified by witnesses as (1) the message written by appellant's employé as dictated by appellee over the phone, (2) said message as received by appellant at its Galveston office and there delivered to its connecting carrier, and (3) said message as it was received at Tampico, were admitted as evidence, and are with the record sent to this office. There is nothing in the testimony suggesting the documents are not what they seem to be, nor that the annotations and indorsements thereon were not made in the usual course of the business of transmitting the message. It appears from the annotations on the one first mentioned that appellee's message was received by appellant at 1:40 a. m. September 14, and was wired to Galveston at 1:51 a. m. of that day; from an annotation on the second one of the documents that the message was delivered by appellant to its connecting carrier at Galveston at 3:20 a. m. of that day; and from annotations on the other document that the message was received at Vera Cruz at 8:30 a. m. of said day, and at Tampico at 5 p. m. September 16. Unless it is arbitrarily assumed that the documentary evidence just referred to was fabricated, the conclusion that negligence on the part of appellant in transmitting and delivering the message to its connecting carrier at Galveston was not a proximate cause of the loss appellee suffered is inescapable. There is nothing in the record indicating that a different case might be made by appellee on another trial. Therefore, reversing the judgment of the court below, judgment will be rendered here that she take nothing by her suit.

### On Motion of Appellee for Rehearing.

The motion will be overruled; but, after considering the record further, we have concluded that, reversing the judgment, we should have remanded the cause to the court below for a new trial, instead of rendering judgment here that appellee take nothing by her suit. The judgment of this court will be modified accordingly.